**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

IN RE:

BILLY JASON HARWELL,

    Debtor.
_____/

STEVEN D. HUTTON, P.L.,

    Appellant,

v.                                                                                          CASE NO:  8:12-CV-482-JSM

LYNN H. MARTINEZ, Chapter 7 Trustee,                        Adv. Pro. No. 8:08-mp-2-MGW

    Appellee.
_____/

## ORDER

    THIS CAUSE comes before the Court upon appeal from the Final Judgment entered by the Bankruptcy Court in favor of the Trustee on her claims to recover fraudulent transfers from the law firm of Steven D. Hutton, P.L.  After considering the briefs of the parties, the record, and the parties' oral arguments on August 15, 2012, the Court concludes that this matter should be remanded to the Bankruptcy Court for additional findings.

    On appellate review, this Court is required to accept the findings of fact of the Bankruptcy Court unless they are clearly erroneous.  The Bankruptcy Court's conclusions of law are reviewed *de novo*.  *In re Optical Technologies, Inc.*, 425 F. 3d 1294, 1300 (11th Cir.

2005) (citing *In re Financial Federated Title & Trust, Inc.*, 309 F. 3d 1325, 1328-29 (11th Cir. 2002)).

This is not the first time these parties have been before this Court. Steven Hutton is a respected attorney in Sarasota, Florida. He received $500,000 into his trust account on behalf of his client, Billy Jason Harwell, and subsequently paid those monies out (some to third parties, some to his client's family members, and some to the client) as instructed by the client. The Trustee sought to avoid the transfer into the lawyer's trust account asserting that the lawyer (Hutton) was an "initial transferee" under 11 U.S.C. § 550(a)(1) and the transfers out of his trust account were fraudulent disbursements intended to hinder or delay creditors.

This Court held that Hutton was not an "initial transferee" because he acted only in a fiduciary capacity as agent for the client, did not have dominion or control over the funds, and did not benefit from the funds in any way. He was obligated to disburse the funds in accordance with the instructions from his client. In sum, this Court said: "The funds in the trust account belonged to the client, not the lawyer."[1] The Eleventh Circuit reversed, concluding that Hutton was an "initial transferee" because he was the first recipient of the funds (his name was on the check) and he was not exempted from that status because there was no determination of whether Hutton exercised "good faith" in disbursing the funds.[2] The Eleventh Circuit held that "good faith" was a necessary component of qualifying for the "mere conduit" exception to "initial transferee" status. The Eleventh Circuit remanded the

---

[1] *In re Harwell*, 414 B.R. 770, 785 (M.D. Fla. 2009).

[2] *In re Harwell*, 628 F. 3d 1312 (11th Cir. 2010).

case for a determination as to whether or not Hutton exercised "good faith" in disbursing the funds.

On remand, the Bankruptcy Court held an evidentiary hearing and concluded that Hutton had not acted in good faith:

> The cases in this area make clear that good faith should be decided based on an objective test. The focus is on what the transferee knew or should have known.
>
> If the transferee has sufficient knowledge to put him on inquiry notice that the transfer may be fraudulent, the transferor lacks good faith. In such instances, knowledge or suspicious events should induce a reasonable person to investigate, and if it is apparent that the purposes of the transfer would hinder or delay a creditor rather than being simply ordinary course of business transactions, then the transferee cannot claim to be acting in good faith and certainly would not be innocent if he then participated in the fraudulent transfer.
>
> In this case, Mr. Hutton can make no credible argument that he was an unwitting or innocent participant in the transfers made by Mr. Harwell. He knew that transfers were intended to get the money away from Mr. Hill's collection efforts. He knew a judgment had been entered. He knew that the transferees were either Mr. Harwell himself or family members or other third parties. The transactions were unusual in his practice, as he and his office manager testified.

Transcript of oral ruling, document 1-5, pp. 21-22.

Appellant's argument on appeal takes issue with the "should have known" standard used by the Bankruptcy Court in determining good faith. Hutton argues that standard is so broad that it serves as a trap to unwary fiduciaries. To the contrary, the Trustee argues that an objective "should have known" standard is necessary because a transferee will always claim to lack actual knowledge.

In support of her position, the Trustee, in her Brief and at oral argument, urges this Court to accept the position of the Seventh Circuit in describing "good faith" as stated in *Bonded Financial Services, Inc. v. European American Bank*, 838 F. 2d 890, 897 (7th Cir. 1988):

> No one supposes that "knowledge of voidability" means complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do. *In re Nevada Implement Co*., 22 B.R. 105 (Bkr.W.D.Mo. 1982); Countryman, 3 Bankruptcy Developments J. at 476-77. Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge. See *Bosco v. Serhant*, 836 F. 2d 271, 276-78 (7th Cir. 1987). But this is not the same as a duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain. "Knowledge" is a stronger term than "notice", see *Smith v. Mixon*, 788 F. 2d at 232. A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own.

This language from the Seventh Circuit is dicta. The Seventh Circuit reasons that "good faith" is irrelevant to "initial transferee" status. It holds that one who acts as an agent for another, with no dominion over the funds, is not an "initial transferee" in the first place. Thus, no exemption is necessary. As it explained:

> Although the Bankruptcy Code does not define "transferee", and there is no legislative history on the point, we think the minimum requirement of status of as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the "initial transferee"; the agent may be disregarded. This perspective had impressive support under the 1898 Code, e.g., *Mayo v. Pioneer Bank & Trust Co.*, 270 F. 2d 823, 830 (5th Cir. 1959) (disregarding corporate forms in order to identify the entity with control over the assets), and has been employed under the 1978 Code as well, e.g., *In re Colombian Coffee Co.*, 75 B.R. 177, 178-79 (S.D. Fla. 1987), affirming 64 B.R. 585 (Bkr. S.D. Fla.1986). See also *In re Auto-Pak, Inc.*, 73 B.R. 52 (D.D.C.1987) (treating the IRS as a mediate rather than initial transferee when the money is washed

>through a second corporation's account); *In re Jorges Carpet Mills, Inc.*, 50 B.R. 84 (Bkr. E.D. Tenn.1985) (similar). Cf. Comment, *Guarantees and Section 548(a)(2) of the Bankruptcy Code*, 52 U.Chi.L.Rev. 194 (1985) (advocating recharacterization of three-cornered transactions to find the real beneficiaries).

*Bonded Financial*, 838 F. 2d at 893.

Even though the Seventh Circuit's description of "good faith" is dicta, it is well taken. The Trustee is correct that a recipient of funds is not likely to admit that he had actual knowledge of fraud. If good faith is to be an element of qualifying as a "mere conduit," a "should have known" standard is necessary in examining whether a party is innocent of wrong doing. Therefore, the Bankruptcy Court's use of that approach is appropriate.

But there remains an issue not fully resolved by the Bankruptcy Court: What is a lawyer or other fiduciary to do when he or she learns that a client is attempting to delay or hinder a creditor after the funds are already in the trust account? What, if anything, can a fiduciary do to protect himself or herself in that situation? He cannot pay one creditor in preference of another. Must he hold the funds until he is sued for conversion by his client?[3]

In his oral pronouncement, the Bankruptcy Court seemed to indicate that a return of the funds to the client might serve as protection for a lawyer caught in this dilemma. The Bankruptcy Court said:

>With respect to Mr. Hutton's duty as an attorney, Mr. Hutton certainly had no discretion in picking and choosing who would receive Mr. Harwell's money that was in Mr. Hutton's trust account. As a general proposition, under the

---

[3] Since this incident occurred in Florida, Mr. Hutton is subject to the regulations of the Florida Bar. Florida Bar Rule 5-1.1(b) states the refusal by an attorney to deliver trust funds to his client upon demand is a conversion.

>rules regulating the Florida Bar, attorneys are bound to follow the instructions of their clients in distributing trust funds.
>
>However, that did not mean that he needed to make his trust account available to Mr. Harwell so that Mr. Harwell could effect transfers intended to delay, hinder or defraud a creditor. Certainly, Mr. Hutton, knowledgeable that Mr. Harwell was doing whatever he needed to have done to keep the settlement proceeds away from Mr. Hill's collection efforts, could have simply refused to be the recipient of the settlement proceeds and could have insisted that the settlement agreement not make him the initial transferee of those funds.
>
>Secondly, he could have simply paid the money to Mr. Harwell, rather than facilitating Mr. Harwell's efforts to remove the funds from the reach of Mr. Hill. Certainly, no one has argued here that the rules regulating the Florida Bar mandate that an attorney follow the instructions of a client in disbursing funds to accomplish fraudulent or criminal purposes.

Transcript of oral ruling, document 1-5, pp. 14-15.

Therefore, this case is REMANDED to the Bankruptcy Court for further proceedings on the issue of whether a lawyer who has suspicions that a client intends to hinder or delay a creditor may protect himself or herself by returning the trust account funds directly to the client. Here, it appears that Hutton did transfer some funds directly to his client, but received no credit for doing so. The Court remands for a finding on the issue of whether Hutton is entitled to a credit for the funds he returned to his client.

It is therefore ORDERED AND ADJUDGED that:

1. This case is REMANDED to the Bankruptcy Court for further proceedings consistent with this Order.

2. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on August 21, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Bankruptcy Judge Mark Williamson
Counsel/Parties of Record

*S:\Even\2012\12-cv-482.bk appeal.wpd*